957 So.2d 833 (2007)
STATE of Louisiana
v.
Eldred JOHNSON.
No. 06-KA-859.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2007.
*834 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Jay Adair, Trial Attorney, Ken Dohre, Trial Attorney, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and GREG G. GUIDRY.
GREG G. GUIDRY, Judge.
Defendant, Eldred Johnson, appeals from his conviction by a jury for second degree murder[1] and his sentence to life in prison at hard labor, without benefits of probation, parole or suspension of sentence. We affirm, and remand for correction of patent errors.
The Defendant was arrested and charged by indictment with second degree murder. He was tried on February 14, 2006, found guilty the next day, and sentenced on March 9, 2006. He filed a timely appeal.
The evidence shows that on February 2, 2005, the Jefferson Parish Sheriff's Office (JPSO) responded to a complaint of gunshots *835 being fired at an apartment complex in Jefferson, Louisiana. On arrival, officers found a white woman, Tina Keamer, barely alive from an apparent gunshot wound. The Defendant, a black male, was leaning over her, screaming and shaking the victim. The officers arrested the Defendant at the scene. The victim later died. An autopsy showed the cause of death was a gunshot to the right side of the victim's head.
According to Cherie Dabdoub, the 17 year-old best friend of the victim, and Annautry Wilkerson, a next door neighbor, the victim and the Defendant were arguing at approximately 6:45 p.m. Dabdoub was on the phone with the victim when she heard the Defendant, referred to as Cal, screaming at the victim in the background. He was drunk and calling the victim ugly names. Dabdoub heard the victim scream back at the Defendant, "No Cal. Cal, stop it." Then she only heard static from the phone connection. Dabdoub previously had seen a gun in the victim's apartment.
According to Wilkerson, the Defendant and the victim were arguing about some money he accused the victim of having, which she was vigorously denying. Wilkerson then heard a gunshot. She was in the process of calling 911 when the Defendant banged on her door, yelling for Wilkerson to open her door, all the while cursing her. Wilkerson did not open the door until after the police arrived.
Another witness, Roshondra Lowe, testified that she was parking her car in the apartment's parking lot when the Defendant, a stranger, came up to her telling her to call 911 because he had just shot his wife. The Defendant appeared disoriented. He was holding a phone, but he was having trouble dialing the numbers due to his agitation. Lowe called 911. The Defendant then went back to the upstairs balcony apartment where he began pleading with the victim to wake up.
The Defendant was tested at the scene for gunshot residue, which was negative. According to Detective Timothy Scanlan, assistant director of the JPSO crime laboratory, and an expert in firearms and tool-mark examination, a negative finding is common, even with people that have recently fired a gun.
The police also found a black cordless phone and its battery on the floor of the balcony near the apartment where the victim was shot. Another phone (white) and a revolver were found inside the apartment on the kitchen table. The revolver was cocked and ready to fire. It contained five live rounds and one spent round. The white phone's battery and a bottle of gin were on the sofa in the living room.
Police investigators determined that the revolver was in working order, and that the victim had been shot with that revolver.
Three children were in the apartment during these events, a two-month old infant, an eighteen-month old child, and a three-year old toddler.
The Defendant made a recorded statement to Detective Eddie Klein at the detective bureau. In his statement, the Defendant said that he and the victim were arguing while the victim was talking on the telephone. He said he retrieved the gun, which was cocked, from a closet. While still arguing, the Defendant and victim went out onto the balcony. They were pushing and shoving each other. The Defendant pointed the gun in the air, but claimed he did not know how the gun fired. He denied pulling the trigger. After, he went back inside the apartment. He put the gun on the table. He then tried to use the black cordless phone, but could not see the numbers without his glasses. He *836 knocked on the neighbor's door, and then saw a lady in the parking lot. He told her to call 911. The Defendant told the officer that he did not mean for anything to happen to the victim.
On appeal, the Defendant asserts that the trial judge improperly denied his Batson challenge. The Defendant also asserts that Captain Scanlan's testimony should have been limited to the information submitted in his written report.
BATSON CHALLENGE
The Defendant argues the trial judge erred in denying his Batson[2] challenge on the basis of race discrimination after the State used two of its peremptory challenges to exclude two black prospective jurors, Joan Wade and Ishman Boles. The State excused Mr. Boles because he was inattentive and excused Ms. Wade because of her inability to recall a past criminal trial in which she had been called as a juror. The Defendant asserts the State's explanation for excluding Mr. Wade was a pretext for racial discrimination because his inattentiveness was a subjective condition only noticed by the prosecutor. Regarding Ms. Wade, the Defendant alleges that two white jurors also could not recall details of their experiences as jurors on prior trials, but neither was peremptorily challenged by the State.
The Equal Protection Clause of the United States Constitution prohibits engaging in purposeful discrimination on the grounds of race in the exercise of peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Batson, the Court established a three part inquiry for the courts to make in determining whether the prosecution engaged in purposeful discrimination in the exercise of its peremptory challenges in jury selection. Batson, 476 U.S. at 89, 106 S.Ct. at 1719. The three-part analysis has been subsequently reaffirmed and described in Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005); Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 973-974, 163 L.Ed.2d 824 (2006). See also: State v. Snyder, 98-1078, p. 7 (La.9/6/06), 942 So.2d 484, 489 [citing Collins.][3]
First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Batson, 476 U.S. at 96-97, 106 S.Ct. at 1712; Collins, 546 U.S. at ___, 126 S.Ct. at 973. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Batson, 476 U.S. at 97-98, 106 S.Ct. 1712; Collins, 546 U.S. at ___, 126 S.Ct. at 973. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, 476 U.S. at 98, 106 S.Ct. 1712; Miller-El v. Dretke, 545 U.S. 231, 250-53, 125 S.Ct. 2317, 2331-2332, 162 L.Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts *837 from, the opponent of the strike." Purkett, 514 at 768, 115 S.Ct. at 1769; Collins, 546 U.S. at ___, 126 S.Ct. at 974.
A reviewing court owes great deference to the trial judge's evaluations of discriminatory intent and should not reverse them unless they are clearly erroneous. State v. Draughn, 05-1825, p. 12 (La.1/17/07), 950 So.2d 583, 595, [internal citations omitted.] A single strike based upon race supports a Batson claim and requires reversal no matter how ably the prosecution has defended the other strikes. State v. Elie, 05-1569 (La.7/10/06), 936 So.2d 791, 797, citing Batson, 476 U.S. at 95, 106 S.Ct. at 1722.[4]
In the instant case, nine prospective jurors had been seated, including one black juror, when the State exercised its second and third peremptory challenges to excuse Ms. Wade and Mr. Boles. At this point, the Defendant made a Batson challenge, asserting that these two prospective jurors were competent, and concluded that the State must be excusing them because of their race. In response to the judge's inquiry, the State replied that there had been no pattern of exclusion based on race. The prosecutor pointed out that juror number nine was a black person.
The trial judge stated that he did not observe any negative comments from Ms. Wade or Mr. Boles that would show they would not be fair jurors, but he further stated that he saw a pattern in the exclusions, because there were two challenges in a row of prospective jurors who are black. In conformity with Batson, he asked the State for race-neutral reasons for dismissing the two potential jurors, the second prong of the Batson inquiry.
The prosecutor explained that Mr. Boles was excused because he yawned on several occasions while the prosecutor was questioning the panel, and seemed "somewhat inattentive" and disinterested in the process. The prosecutor did not believe that Mr. Boles would be able to sit through a multi-day trial and concentrate on the evidence and testimony. The prosecutor stated that he was concerned about Ms. Wade's inability to recall anything at all about the criminal case on which she was an alternate juror several years before this trial.
The trial judge accepted as race-neutral the prosecutor's reason for excusing Mr. Boles and Ms. Wade. As to Ms. Wade, the judge noted that she said she was angry in the prior trial when she was called back to serve as an alternate after she had been dismissed. But, the trial judge said, he could not tie that in with being called to serve in this case.
Responses by the state qualify as race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation. Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). We agree with the trial judge here, that the State's reasons for excusing Mr. Boles and Ms. Wade are race-neutral and do not appear inherently discriminatory.
The third question in this determination then, is whether the trial judge abused his discretion in finding that the Defendant failed to carry his burden of proving purposeful discrimination.
In Alex v. Rayne Concrete Service, 05-1457, 05-2344, 05-2520, p. 16, (La.1/26/07), 951 So.2d 138, 151, the Louisiana Supreme Court recognized that, in Miller-El, the *838 Supreme Court expanded upon the type and quantum of evidence to be considered in Batson's third step. See also: Snyder, 98-1078 at p. 12, 942 So.2d at 492. In Snyder, the Louisiana Supreme Court explained:
The Miller-El opinion begins by recognizing Batson's weakness is its "very emphasis on the particular reasons a prosecutor might give." Miller-El, 545 U.S. at 240, 125 S.Ct. at 2325 . . . Miller-El, therefore, redirects attention to "Batson's explanation that a defendant may rely on `all relevant circumstances' to raise an inference of purposeful discrimination," Id., and to the trial judge's duty under Batson "to assess the plausibility" of the prosecutor's proffered reason for striking a potential juror "in light of all evidence with a bearing on it." (Emphasis supplied.) Id., 545 U.S. at 252, 125 S.Ct. at 2331.
Snyder, 98-1078 at pp. 8-9, 942 So.2d at 490.
Miller-El made it clear that Batson's admonition to consider all relevant circumstances in addressing the question of discriminatory intent requires close scrutiny of the challenged strikes when compared with the treatment of prospective jurors who expressed similar views or shared similar background circumstances. Elie, 05-1569 at p. 6, 936 So.2d at 796. However, in Collins, the United States Supreme Court admonished reviewing courts from substituting their evaluation of the record for that of the trial judge. Collins, 546 U.S. at ___, 126 S.Ct. at 969. See also, State v. Elie, 05-1569 at p. 7, 936 So.2d at 796.
In this case, the Defendant contends Mr. Boles' inattentiveness was a pretext for racial discrimination. However, peremptory challenges based on body language have survived Batson challenges, when accepted by the trial judge, who has broad discretion when making the ultimate determination of purposeful discrimination. See, State v. Hoffman, 98-3118, p. 15 (La.4/11/00), 768 So.2d 542, 559-560[5], and the cases cited therein. See also, State v. Seals, 95-0305, p. 8 (La.11/25/96), 684 So.2d 368, 374-75, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997),[6] where the Court noted that body language, the failure to make eye contact and juror inattention have been recognized as important factors when exercising peremptory challenges.
We find no error in regard to Mr. Boles. The prosecutor stated Mr. Boles was struck from the jury due to his inattentiveness. Since Mr. Boles' body language and inattentiveness was a race-neutral reason for excluding him from the jury, we find that the trial judge did not abuse his discretion in denying the Batson challenge regarding this prospective juror.
The Defendant argues that Ms. Wade was excluded based on race, arguing that the State accepted white jurors, Ms. Sage and Ms. Rogers, neither of whom could recall details of prior trials, yet the State excluded Ms. Wade for that same reason. We find that the exclusion of Ms. Wade was not purposeful discrimination.
Ms. Sage sat on two previous juries. She could not recall the details relating to the jury ten years before. However, she remembered that the jury she was on four years before was a criminal trial involving *839 drugs, that she agreed with the verdict, and that the defendant was convicted.
Ms. Rogers recalled serving on a jury in Jefferson Parish more than ten years earlier. She could not recall whether the matter was civil or criminal, but she stated it involved a person who was driving while intoxicated. She stated that she and the other eleven jurors agreed with the result. Although she could not remember if money was awarded, she recalled that the matter concerned drinking and driving. She also remembered that she had decided the driver was intoxicated after viewing photographs showing alcohol in the vehicle.
Ms. Wade informed the trial judge that she was on a criminal jury in Orleans Parish approximately 12 years earlier, and served as an alternate. Ms. Wade said she was called to return to court, but she didn't have to sit through anything, had to wait, and did not participate in deliberations. She did not recall anything about the case, except that she was with the group, and then they put her in a room. When the prosecutor asked her if she recalled the charge or the verdict, she responded that she did not remember anything else, because she was angry about having to serve as the alternate.
There is a noted contrast between the responses of Ms. Wade and the responses of Ms. Sage and Ms. Rogers. Ms. Wade remember few details, but remembered being angry at being recalled as a juror. Ms. Sage and Ms. Rogers remembered more details about their prior jury service, and neither expressed any anger for having to participate in jury service. We find that Ms. Wade's answers to the questions by the prosecutor and the trial judge exhibited a race neutral reason for excluding her from the jury.
In addition to reviewing the jurors' statements, we have reviewed the record. The record reflects that there were six blacks in the jury venire. Two were excused for cause after becoming ill. The State used five peremptory challenges, two of which were exercised on Ms. Wade and Mr. Boles. Two black people, Ms. Digs and Mr. Rose, served on the jury. There was no evidence of jury-shuffling, or that the prosecutor questioned blacks differently than white jurors. Rather, the prosecutor asked the same questions about past jury service to other jurors in the venire.
Considering that the trial judge was in the best position to determine the prosecutor's sincerity and credibility, the great deference given the trial judge in making such decisions, and the evidence in the record, we find that the Defendant failed to bear his burden of proving purposeful discrimination. Thus, the trial judge did not err in denying the Defendant's Batson challenges.
CAPTAIN SCANLAN'S TESTIMONY
The Defendant contends that Captain Scanlan's expert testimony on gunshot residue testing should not have been allowed, because the State failed to notify the Defendant that Captain Scanlan would be testifying about gunshot shot residue testing. The Defendant claims that Captain Scanlan's testimony should have been limited to the subjects in his report, which did not contain anything about the test. The report concluded that the projectile in the victim's head was shot from the gun found at the scene and that the gun was in working order.
The State responds that this Court correctly ruled in a writ disposition in this case that Captain Scanlan could testify about gunshot residue testing, because the Defendant had opened the door to the subject with prior State witnesses. The State urges this Court not to reconsider its prior ruling under the "law of the case" *840 doctrine. Alternatively, the State contends that the Defendant was not prejudiced by the testimony.
Prior to Captain Timothy Scanlan's testimony, the trial judge accepted him as an expert in the field of firearms and tool-mark examination. The Defendant objected to Captain Scanlan's testimony regarding gunshot residue testing, since the report does not refer to it. Although the trial judge concluded that Captain Scanlan's field of expertise included gunshot residue testing, he ruled that Captain Scanlan's testimony was limited to the content of his report. The trial judge found that it was unfair to the Defendant for Captain Scanlan to testify beyond the scope of his report. The State took a writ to this Court, which granted relief in pertinent part:
The State's application for relief with regard to the trial court's restriction on the testimony of Captain Timothy Scanlan is amended to allow the State to question Captain Timothy Scanlan, who has been qualified as an expert in firearms and forensic science, about the accuracy and reliability of gunshot residue tests since that subject matter was raised during the cross examinations of Technician Mike Aiklen and Lt. Don English.
According to the "law of the case" doctrine, an appellate court will generally refuse to consider its own rulings of law on a subsequent appeal in the same case. State v. Hollimon, 04-1195, pp. 3-4 (La.App. 5th Cir.3/29/05), 900 So.2d 999, 1000-1001; State v. Junior, 542 So.2d 23, 27 (La.App. 5th Cir.1989), writ denied, 546 So.2d 1212 (La.1989). It is applicable to all decisions of an appellate court, not solely those arising from full appeal. Junior, 542 So.2d at 27. One reason for imposition of the doctrine is the avoidance of indefinite relitigation of the same issue; but it will not be applied in cases of palpable former error. Id.
In the present case, the Defendant urges that the trial court's ruling on the limitation of Captain Scanlan's testimony was correct. The Defendant suggests that this Court's prior disposition was erroneous, because the State referred to Captain Scanlan's field of expertise in its writ application as "firearms and forensic science," instead of the "firearms and tool-mark examination." However, there is no merit to this claim.
The issue before this Court on supervisory writs was whether or not Captain Scanlan could testify on gunshot residue testing, despite the State's failure to provide notice of this anticipated testimony to the Defendant. The issue was not whether Captain Scanlan was testifying outside of his expertise. Notably, the record reflects that the mistake was brought to the attention of the trial judge, who stated for the record that the State had presented the correct issue to this Court.
On appeal, the Defendant has produced no new arguments or evidence to show that the prior disposition of this Court was patently erroneous. The Defendant's brief does not cite any statutory or jurisprudential authority to support the position that the State was compelled to inform the Defendant that the State's firearm expert would testify about other matters within his expertise that were not included in the expert's report. The Defendant contends he was surprised by the late discovery that Captain Scanlan would testify about gunshot residue testing. However, the record reflects that Defendant cross-examined two of the State's witnesses, Officer Mike Aiklen and Lieutenant Don English, about the accuracy of gunshot residue testing, neither of whom were qualified as experts in that area. The Defendant only objected *841 when the State attempted to introduce testimony on gunshot residue testing through Captain Scanlan.
The record shows that the Defendant was neither surprised nor unprepared to deal with Captain Scanlan's testimony. Rather, it shows that the Defendant thoroughly cross-examined Captain Scanlan on this issue, including asking him about studies and different publications on the accuracy of gunshot residue testing. Moreover, it is inconceivable that the Defendant could believe that the State would not have its firearm expert testify about the accuracy of the gunshot residue test, since the Defendant's gunshot residue test was negative, and since the Defendant questioned the accuracy of the test with two of the State's previous witnesses. Based on the foregoing, we find that the prior ruling was not patently erroneous and did not produce an unjust result. Furthermore, we find that the Defendant was not prejudiced by this testimony at trial. Thus, we decline to reconsider the prior ruling allowing Captain Scanlan's to testify as an expert about the accuracy and reliability of gunshot residue tests.
ERROR PATENT DISCUSSION
The record was reviewed for patent errors in accordance with La.C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337, 338 (La.1975); Polizzi, 05-478 at p. 18, 924 So.2d at 315. We find two patent errors.
There is a discrepancy between the minute entry/commitment and the transcript. In the transcript, the trial judge sentenced the Defendant to hard labor, but the minute entry/commitment does not reflect that part of the sentence. When the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). Accordingly, we will direct the district court to correct the minute entry/commitment reflecting this change and will direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which the Defendant has been sentenced. See, State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846.
In addition the record reflects that there is a discrepancy between the minute entry and the transcript regarding the State's exercise of a peremptory challenge. The minute entry reflects that the State exercised a peremptory challenge to excuse "Prospective Juror Chupina," while the transcript reflects that the court excused Mr. Chupina for cause. We will direct the trial judge to correct the minute entry to correspond with the transcript.[7]
Accordingly, the Defendant's conviction and sentence are hereby affirmed. The case is remanded to the district court for correction of the minute entry/commitment to reflect that the sentence is to be served at hard labor, and to reflect that "Prospective Juror Chupina" was excused for cause. The Clerk of Court is directed to transmit the original of the corrected minute entry to the officer in charge of the institution to which the Defendant has been sentenced.
CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF MINUTE ENTRY/COMMITMENT.
NOTES
[1] See: La.R.S. 14:30.1.
[2] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[3] Snyder was on remand from the United Supreme Court to reconsider the decision in light of Miller-El v. Dretke.
[4] See also, Alex v. Rayne Concrete Service, 05-1457, 05-2344, 05-2520, p. 12 (La.1/26/07), 951 So.2d 138, "Errors regarding discrimination in the composition of the grand jury or petit jury are not harmless."
[5] Opinion supplemented, 00-1609 (La.6/14/00), 768 So.2d 592, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000).
[6] Post-conviction relief affirmed on other grounds, 00-2738 (La.10/25/02), 831 So.2d 828,
[7] Because this correction does not affect the Defendant's sentence, it is not necessary for this correction to be transmitted to the institution where the Defendant is confined.