STATE OF LOUISIANA

VERSUS

IRWIN GOMEZ-COLON

NO. 20-KA-302

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 17-2493, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

December 22, 2021

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Stephen J. Windhorst

<u>**AFFIRMED**</u>
   **FHW**
   **SMC**
   **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
      Honorable Paul D. Connick, Jr.
      Thomas J. Butler
      Andrea F. Long
      Rachel L. Africk
      Joshua K. Vanderhooft

COUNSEL FOR DEFENDANT/APPELLANT,
IRWIN GOMEZ-COLON
      Mary Constance Hanes

**WICKER, J.**

After a four-day jury trial, defendant was unanimously found guilty as charged of second degree murder, in violation of La. R.S. 14:30.1.  On January 6, 2020, he was sentenced to serve life in prison at hard labor without benefit of probation, parole or suspension of sentence, with credit for time served.  Defendant now appeals from his conviction and sentence, contending that the trial court erred in allowing the admission of three prior incidents, where defendant allegedly committed sex offenses as other crimes evidence pursuant to La. C.E. Art. 404(B), at his trial. For the reasons that follow, we affirm defendant's convictions and sentences.

## PROCEDURAL BACKGROUND

On July 27, 2017, a Jefferson Parish Grand Jury indicted defendant, Irwin Gomez-Colon, with the second degree murder of Nancy Yahaira Gonzales Rodriguez, in violation of La. R.S. 14:30.1.1. On July 28, 2017, defendant was arraigned and pled not guilty.

On April 5, 2018, the State filed a notice of intent to offer "other crimes evidence" pursuant to La. C.E. art. 404(B) and La. C.E. art. 412.2 pertaining to three prior incidents where defendant was alleged to have committed sex offenses.  On June 18, 2018, the trial court held a hearing on the State's motion, and on the following day, ruled that the evidence was admissible pursuant to La. C.E. art. 404(B) and La. C.E. art. 412.2. At that time, defendant noticed his intent to seek supervisory review of the ruling, which was granted by the trial court.

On December 7, 2018, this Court granted, in part and denied in part, defendant's writ application, reversing the portion of the trial court's ruling granting the State's notice of intent under La. C.E. art. 412.2, and remanding the matter for further proceedings.  Thereafter, defendant sought relief with the Louisiana Supreme Court challenging this Court's writ decision, which was denied on February 25,

2019. *State v. Gomez-Colon*, 18-412 (La. App. 5 Cir. 12/7/18), 2018 WL 6442045, *writ denied*, 19-35 (La. 2/25/19), 266 So.3d 293.

A four-day jury trial occurred from December 2, 2019 through December 5, 2019. The jury unanimously reached a verdict of guilty as charged. On January 6, 2020, defendant filed a motion for new trial. On that same day, the trial court denied the motion, and after defendant waived the sentencing delays, sentenced him to life in prison at hard labor without the benefit of parole, probation, or suspension of sentence. Thereafter, defendant made an oral motion for appeal and filed a written motion for appeal, which was granted by the trial court on January 7, 2020.

On appeal, defendant challenges the admissibility of "other crimes evidence" pursuant to La. C.E. art. 404(B) relating to the three prior incidents where defendant was alleged to have committed sex offenses.

## FACTUAL HISTORY

The following was adduced at trial. Annelys Vargas, who was the neighbor and friend of the victim, Nancy Gonzales Rodriguez, testified that in April of 2017, she lived at 2021 Esplanade Street, Apartment B, in Terrytown. The two friends were close and saw each other every day. She testified that Ms. Rodriguez lived with her four-year-old son, Jeremy, who has special needs. Ms. Vargas testified that Ms. Rodriguez had been separated from her husband since December 2016.

At trial, Ms. Vargas recounted that she last saw the victim on a Saturday morning in April 2017, and that she began worrying about Ms. Rodriguez when she did not appear for their regular coffee on Sunday. She explained that after noticing Ms. Rodriguez did not take out her trash, she knocked on the victim's apartment door, but received no answer. Ms. Vargas testified that Ms. Rodriguez did not come for coffee again on the following day, Monday, April 24, 2017. For that reason, she then called her sister-in-law, Noemi Vazquez, to inquire if she was with Ms. Rodriguez. Ms. Vazquez told her that the victim went home on Saturday at 6:30

p.m. Ms. Vargas testified that Ms. Vazquez came to her apartment, they knocked on Ms. Rodriguez's door, and Ms. Vazquez could hear a child crying, which prompted Ms. Vazquez to look in the victim's window, and she observed Jeremy sitting on the sofa eating cereal while the victim was lying on the floor. Ms. Vargas then called 911.

Deputy Ashira Arbuthnot testified that on April 24, 2017, she was dispatched to conduct a welfare check at 2120 Empire Place in Terrytown. Deputy Arbuthnot was informed by the victim's neighbors that Ms. Rodriguez had not been seen or heard from in a few days. She was also told that the victim's child was heard crying inside the apartment. The deputy then looked through the apartment window and saw the victim. She described her as naked, lying on her right side, and surrounded by blood. She testified that she then called the fire department to open the apartment door.

Detective William Roniger, of the Jefferson Parish Sheriff's Office, was the lead detective in the homicide investigation, and he testified that once he arrived to the scene, he observed the victim, later identified as Nancy Rodriguez, in the living room with multiple stab wounds. He further testified that a used condom and clothing were located on the floor near the victim's body. At trial, Detective Roniger identified several photographs that were taken of the crime scene on April 25, 2017. He also recalled that the apartment door was breached because the deadbolt had been locked in place, and that the victim's keys were not located inside of the apartment. Detective Roniger explained that several items were collected from the scene and swabbed for DNA analysis, including two condoms, beer bottles, and a One Priority Environmental Services hat. He testified that blood, which was located in the kitchen, living room, and on the front door, was also swabbed for DNA analysis.

While at the crime scene, Detective Roniger learned of the victim's ex-husband, Jhoel Ferrals Delgado, who resided in Meridian, Mississippi. He explained

that the victim's ex-husband was initially a suspect and that his cell phone number was obtained from the victim's brother-in-law, Santos Delgado LaGares. Detective Roniger then obtained a search warrant for Mr. Delgado's cell phone records and cell site locations. He also obtained a warrant for a buccal swab to compare to the blood evidence found at the scene and a warrant to examine his body. After Detective Roniger spoke with Mr. Delgado via telephone, Mr. Delgado agreed to be interviewed at the detective bureau on April 24, 2017. At the interview, Mr. Delgado explained that he was at home in Meridian, Mississippi, on April 22 and April 23, 2017. Detective Roniger testified that Mr. Delgado's alibi was subsequently corroborated by his cell phone site locations and also because injuries were absent from his body.

Detective Roniger confirmed that on April 25, 2017, the crime lab notified him that the swab from the inside of the used condom found next to the victim's body was a match in CODIS to defendant, Irwin Gomez-Colon. He then conducted a criminal history search and discovered that defendant lived at 2109 Euclid Street, Apartment D, which was located across the parking lot from the victim's residence. Detective Roniger obtained a search warrant for defendant's residence, and thereafter, arrested defendant for second degree murder.

Detective Roniger testified that he also obtained a search warrant to photograph defendant's body and to collect a DNA buccal swab from him. He described defendant as having: (1) an abrasion on his forehead; (2) a small contusion above his left eye; (3) "fingernail claw marks on [defendant's] chest;" (4) wounds located on the inside of defendant's right hand, which were indicative of a knife slipping; and (5) a bandage covering two puncture wounds to his right shoulder.

After the defendant was photographed and swabbed, Detective Roniger and Sergeant David Canas, who was a Spanish translator, obtained a statement from defendant. After being advised of his Miranda rights, defendant agreed to provide a

formal statement wherein he denied committing the crime and stated that he was at a reggae bar/club in Mid-City of New Orleans on April 22, 2017, the night of the homicide. Defendant recounted to Detective Roniger that: (1) he paid for a ride to the bar/club by an undisclosed friend who drove a red Honda Accord; (2) he went to a dollar store to buy a bandage for his shoulder for an injury sustained when unknown men allegedly attempted to rob him outside the bar/club; (3) returned to his residence at 8:00 a.m. on Sunday via taxi; and (4) denied ever having sexual intercourse with the victim.

Detective Roniger explained that he was unable to corroborate defendant's statement with his cell phone records, and defendant could not provide a name or location of the alleged robbery incident, the name of the friend who drove him to the bar/club, or the name of the taxi company that drove him home. He also testified that defendant's cell phone records showed defendant was in the general area near the cell tower located at 541 Behrman Highway in Terrytown, Saturday night through Sunday morning. Detective Roniger confirmed that defendant's DNA was found in the condom lying next to the victim's body; and that text messages were found between the defendant and the victim on March 23, 2017, just a couple of weeks before the homicide.

At trial, Maria Mari Ramirez Solano, who rented a room to defendant from October 2016 until April 25, 2017, testified that she resided with her husband and two sons in an apartment at 2109 Euclid Street. Ms. Solano explained that she worked with defendant at One Priority Environmental Services. She recalled arriving home from work on April 25, 2017, to detectives executing a search warrant, and arresting defendant. Ms. Solano testified that on the day of the victim's murder, she was at home with her family and that defendant knocked on the door sometime after 11:00 p.m. When she opened the door, Ms. Solano asked defendant what happened, and he said, "some black folks wanted to rob [him]." She told him to go

upstairs, and thereafter, she returned to her bedroom and fell asleep. She testified that on the day of the homicide, both she and the defendant finished work around 5:00 p.m., and he left to have drinks. She did not view any wounds on defendant until the following Monday, and defendant explained that "they" wounded him in the bar/club on Saturday.

Dr. Dana Troxclair, a forensic pathologist with the Jefferson Parish Coroner's Office, testified that on April 25, 2017, she performed an autopsy on Ms. Rodriguez. She confirmed that her observations regarding rigor mortis and lividity were consistent with the time of death in the evening hours on April 22, 2017. Dr. Troxclair stated that Ms. Rodriguez suffered twenty-four sharp-force injuries, and there was evidence that the victim had been strangled. She further testified that there was also evidence of multiple blunt-force injuries to the victim's "right temple and parietal area and on the occipital scalp," along with abrasions and contusions on her forehead, left shoulder, upper left arm, and right hand.

Dr. Troxclair explained that she collected a buccal swab and a sexual assault kit. She noted that an examination of the victim's vaginal area could not determine whether consensual or non-consensual sexual intercourse occurred. Dr. Troxclair opined that the cause of death was a combination of sharp-force wounds and strangulation, and she further opined that the manner of death was homicide.

Laura Oliver, who formerly worked as a forensic DNA analyst with the Jefferson Parish Sheriff's Office DNA Laboratory, testified that she conducted the DNA analysis. Ms. Oliver explained that the DNA material from the two condoms matched defendant's DNA profile in the CODIS system. She pointed out that the DNA profile from the sample was the same as the DNA profile on record from defendant in three different jurisdictions: Houston, New Orleans, and Jacksonville. Ms. Oliver testified that the DNA profile she obtained from the swabs of blood from

the living room floor, kitchen counter, and kitchen sink was consistent with the reference sample of defendant.

Ms. Oliver further testified that she conducted DNA analysis on a swab of the blade handle of a Santuko knife, the inside and outside of two condoms, and defendant's right sandal. Regarding the DNA profile on the inside and outside of the condom found in the victim's trash can, Ms. Oliver determined that it was consistent with the victim's DNA. As to the DNA profile on the inside and outside of the condom found in the living room, Ms. Oliver concluded that it was consistent with a DNA mixture of a major contributor, the victim, and a minor contributor, the latter of which the defendant could not be excluded, but Mr. Delgado was in fact excluded.

Jene Rauch, an expert in blood stain pattern analysis and crime scene reconstruction, who was employed with the Jefferson Parish Crime Laboratory, testified that she composed a report regarding the crime scene reconstruction and blood spatter analysis. Ms. Rauch confirmed that she prepared a PowerPoint with crime scene photographs to explain the blood spatter analysis and crime scene reconstruction, and that most of the bloodshed throughout the residence was low to the ground, which indicated that the majority of the attack occurred on the floor. She testified that the walls did not have any visible blood stains, indicating that the attack did not happen when the individuals were upright.

Ms. Rauch further testified that some of the stains in the kitchen sink could be consistent with the suspect cleaning up his hands or addressing his wounds. She confirmed that the blood was swabbed for DNA and linked to the defendant. Ms. Rauch provided that the victim's fingerprint located on the outside of the apartment door indicated that the victim made it to the doorway or partially out of the door at some point after a "bloodletting injury." She stated that the blood on the countertop and stove in the kitchen were also swabbed for DNA and linked to the suspect. Ms.

Rauch explained that large drops of blood near the door and the stab wounds that defendant had on the right side of his arm were consistent with the DNA profile obtained from defendant. She confirmed that a condom found at the scene matched both the victim and the suspect. Ms. Rauch testified that the multi-directional blood spatter and the layers of different blood spatter at the scene were consistent with a prolonged attack, which she described as being a "dynamic event" with multiple blows, and that the individuals were moving around the room.

At trial, Jefferson Parish Sheriff's Office Detective Kirk Zeagler, who participated in the homicide investigation and executed the search warrant at 2109 Euclid, identified several photographs that were taken of the apartment during the search. Detective Zeagler confirmed that defendant had a Priority One Environmental Services beer koozie in his bedroom. He also testified that a piece of stationary from the New Orleans Convention Center with the victim's first name and cell phone number was found on defendant's desk. Detective Zeagler stated that SKYN brand condoms, which matched the condom brand found at the homicide scene, were located inside defendant's closet.

At trial, three women, Rosibel Hernandez, Yaira Batiz, and Gabriela Dorela Pinto, who all had been sexually assaulted by defendant prior to the April 2017 homicide, testified about the events surrounding their respective attacks.

Rosibel Hernandez testified that on April 15, 2014, she was living in New Orleans with her children, and she met defendant through a friend. Her friend told her that defendant needed a family member brought back from Houston, Texas, and that she would be paid for providing the transportation. Ms. Hernandez recalled that defendant traveled with her because she was not familiar with the area. Once they arrived to Houston, Ms. Hernandez noted that defendant called his family member and was told to pick up the family member the next day. Defendant paid for a hotel room that contained two beds. Ms. Hernandez testified that while she was on the

phone with her boyfriend, defendant told her to lay down on the bed while he laid on the other bed. Once she concluded her telephone call, defendant went to the bathroom and then tried to turn off the lamp near her bed. She told him not to turn off the lamp, and he threw himself on top of her. She recalled defendant putting his forearm on her neck and telling her that he wanted to perform oral sex on her. Ms. Hernandez told defendant "no" because she had a boyfriend who she loved. Defendant said that he knew where her daughters were and that he would kill them.

Ms. Hernandez testified that she was shocked, did not resist, and that defendant inserted his penis in her vagina. She recalled telling defendant that she wanted something to eat and that they should go outside. Ms. Hernandez testified that shortly thereafter, they went to the hotel's front office, and upon arrival, she screamed in Spanish to a male individual that defendant had raped her. The male called the police, and defendant fled. She testified that the police were contacted, and she was taken to the hospital where an exam was performed. She confirmed that swabs were taken from different areas of her body, including her vagina, and photographs were taken of her. She testified that defendant was not prosecuted for this offense and that she received a letter from the Houston Police Department to this effect.

Yaira Batiz testified that on April 24, 2015, she went to the store after her shift ended at the Hyatt Hotel in New Orleans. Ms. Batiz recalled meeting defendant at the store. Upon leaving there, she proceeded to her residence. At that point, Ms. Batiz was unaware that defendant was following her. When she opened her door, defendant pushed her inside of her house. Defendant asked to use her bathroom, and she told him that he could not enter her house because she was alone. Instead of leaving her home, defendant sat in her living room. Ms. Batiz testified that defendant received a call, and once the call concluded, he grabbed a knife from his pocket. Defendant proceeded to grab Ms. Batiz and put his hands around her neck. Ms.

Batiz testified that defendant pushed her to the bed, took off her clothes, and inserted his penis in her mouth and raped her. She recalled that defendant then put on his clothes and told her that he knew how to kill people. Ms. Batiz then went outside and found someone to call the police. Thereafter, she went to the hospital and was required to remain there for three days. While at the hospital, she was examined because her neck had markings, and photographs were taken of her body. Ms. Batiz later learned that the charges were dropped against defendant. Ms. Batiz confirmed that the State told her that it would sign a U-visa if she cooperated in the instant case.

Gabriela Dorela Pinto testified that on April 24, 2016, she was living with her cousin in Jacksonville, Florida. Ms. Pinto testified that they were drinking in her cousin's apartment and that defendant, who was her cousin's boyfriend, was also present. Both Ms. Pinto and defendant left the apartment to purchase cigarettes, and they eventually went to a party located at a nearby building. After an hour at the party, the two went to find cocaine. Ms. Pinto said that defendant asked her if she wanted to try cocaine, and told her to go with him to the back of the apartment building. Once there, Ms. Pinto recalled defendant grabbed her by the hair and threw her to the ground and then grabbed her by the throat with both of his hands. Defendant then "took my pants off and he penetrated me." She testified that it happened very fast, and once "he finished and he left." Ms. Pinto stated that when she returned to her cousin's apartment, her partner who was also present, called the police, and she went to the local hospital. At the hospital, she recalled being examined, swabs were taken from her body, and photographs were taken of the marks on her neck. She explained that she talked with the police, and they did follow-up for a couple of months. Ms. Pinto testified that the police closed the case because she did not cooperate. She also confirmed that the State would assist her with a visa in exchange for her cooperation in the instant case.

Defendant did not testify at trial, but the State admitted into evidence the statement he provided to the detectives, which was published to the jury.

## LAW AND ANALYSIS

On appeal, in his sole assignment of error, defendant contends that the trial court abused its discretion by permitting the State to introduce evidence of "other crimes" at trial pursuant to La. C.E. art. 404(B)(l); specifically, the testimony of Rosibel Hernandez, Yaira Batiz, and Gabriela Dorela Pinto, who allegedly were sexually assaulted by defendant.

In support of his contentions, defendant argues that under La. C.E. art. 404(B), his alleged prior sex crimes were not independently or substantially relevant to the charged offense of second degree murder. He also avers that under the balancing test enunciated in La. C.E. art. 403, the introduction of the three prior sex offenses was more prejudicial than probative, and that the pretrial ruling on the matter by this Court was erroneous.

Defendant maintains that the victim's ethnicity has little relevance in light of the fact that defendant is also Hispanic and speaks little to no English. Defendant asserts that he would naturally meet and associate with other persons who speak Spanish. He contends that this fact is "practically meaningless under the circumstances." Defendant acknowledges that the sexual assaults and the murder all occurred in the month of April. However, he argues that this is only a coincidence and cannot be a basis for allowing the State to introduce evidence of other sexual assaults in a murder trial. Next, defendant turns to this Court's prior ruling that the "other crimes" evidence should be admitted due to the similarity in the perpetrator's "method of choosing the victim." He argues that the testimony of the sexual assault victims, however, established that the perpetrator chose them in different ways. Defendant contends that there was no testimony indicating how the perpetrator chose the victim in the instant matter.

Defendant points out that this Court, in its prior ruling, concluded that the three sexual assaults were similar to the murder because the perpetrator of the assaults used strangulation. He asserts that the method of strangulation varies between the sexual assault victims and the murder victim. Lastly, defendant asserts that while the DNA evidence may establish that he had sexual relations with all four women, it does not mean the three sexual assaults were similar to the murder for purposes of La. C.E. art. 404(B). To support his contention, defendant argues that the use of the condom in this matter suggested that the sex was consensual. In sum, defendant challenges this Court's prior ruling that other crimes evidence of defendant's three prior incidents of sexual assaults was admissible under La. C.E. art. 404(B).

In response, the State argues that the trial court did not abuse its discretion in admitting the prior instances of sexual assault under La. C.E. art. 404(B). The State asserts that defendant failed to establish that this Court should reconsider its previous ruling. The State further avers that the victim's background, injuries, and evidence at the scene were similar to the victims of the prior sexual incidents. The State maintains that the probative value of the evidence was not substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, by considerations of undue delay, or waste of time. The State emphasizes that the testimony of the three "other crimes" witnesses was presented in an orderly, concise fashion near the end of the State's case. The State argues that the trial judge specifically instructed the jury as to the limited and proper use of the evidence of "any other wrongs, bad acts, or crimes."

Relevant evidence is evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence

which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.

Evidence of other crimes or bad acts committed by a criminal defendant is generally not admissible at trial. La. C.E. art. 404(B)(l ); *State v. Prieur*, 277 So.2d 126, 128 (La. 1973). However, when such evidence tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule. *State v. Aleman*, 01–743 (La. App. 5 Cir. 1/15/02), 809 So.2d 1056, 1065.

La. C.E. art. 404(B)(l ) provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

In order for other crimes evidence to be admitted, the following requirements must be satisfied. First, one of the above-enumerated factors must be at issue, have some independent relevance, or be an element of the crime charged in order for the evidence to be admissible. *State v. Jackson*, 625 So.2d 146, 149 (La.1993). Second, the State must prove that the defendant committed the other acts by a preponderance of the evidence. *State v. Hernandez*, 98–448 (La. App. 5 Cir. 5/19/99), 735 So.2d 888, 898–899, *writ denied*, 99–1688 (La.11/12/99), 750 So.2d 194. Third, the requirements for admission of such evidence, set forth in *State v. Prieur*, 277 So.2d

126, 130 (La.1973), must be met. In *Prieur*, the Court explained that "within a reasonable time before trial, the State must furnish to the defendant a written statement of the acts or offenses it intends to offer, describing same with the general particularity required of an indictment or information. In the written statement, the State must specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses." *Id*. Finally, the probative value of such evidence must be weighed against its prejudicial effect. *State v. Lisotta*, 97–406 (La. App. 5 Cir. 2/25/98), 712 So.2d 527, 530.

Additionally, the probative value of the extraneous evidence must outweigh its prejudicial effect. *State v. Maise*, 759 So.2d 884, 894 (La. App. 5 Cir. 2000). The burden is on the defendant to show that he was prejudiced by the trial court's admission of *Prieur* evidence. *State v. Temple*, 01–655 (La. App. 5 Cir. 12/12/01), 806 So.2d 697, 709. Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence pursuant to La. C.E. art 404(B)(l ) will not be disturbed. *State v. Williams*, 02–645, p. 16 (La. App. 5 Cir. 11/26/02), 833 So.2d 497, 507, *writ denied*, 02–3182 (La.4/25/03), 842 So.2d 398.

After reviewing the record before this Court, we find no abuse of the trial court's discretion in this case. The record reflects that the State had three primary justifications for introducing evidence of prior bad acts or other crimes to the jury: (1) to show identity, (2) knowledge, and (3) *modus operandi* or system under La. C.E. art. 404 (B). The evidence of bad acts or other crimes prior to being charged with second degree murder are relevant to show defendant had a volatile nature to sexually assault women at night in the month of April wherein he used a form of strangulation with all of the victims, left evidence of his DNA in each of the sexual assault attacks, consistently selected women of Hispanic descent who spoke little to no English, and lured or confined women to isolated locations to easily subdue the women. Furthermore, the primary purpose of the evidence was not to prove

defendant's bad character, but was independently relevant to illustrate his pattern of sexual assault behavior toward the victim whose case has many similarities to defendant's assault and treatment of his past victims, except in this instance, the victim physically struggled with defendant during the attack considering the defensive wounds she suffered and the blood spatter found at the scene. Thus, the record demonstrates that the probative value of the other crimes' evidence outweighs its prejudicial effect considering that defendant was not on trial for sexual assault, but instead for second degree murder.

Additionally, the trial judge gave the jury a limiting instruction that the evidence of other crimes was to be used only "to show the defendant's identity, knowledge, and system."

In opposition, the State urges this Court to reconsider its prior ruling that because defendant was not charged with a crime involving sexual assaultive behavior, the evidence was not admissible under La. C.E. art. 412.2, considering that the trial record shows that the State presented alternative theories of second degree murder, including that defendant killed the victim during the perpetration of first degree rape. We find that this argument lacks merit. The State has failed to show that any subsequent Louisiana jurisprudence would suggest that this Court's prior ruling as to the inadmissibility of evidence under La. C.E. art. 412.2 was erroneous. Furthermore, this Court has held that the evidence was admissible under La. C.E. art 404(B). Thus, the State has failed to show that reconsideration of our prior ruling is warranted.

On appeal, defendant presents essentially the same argument as he made in his writ application; that is, that under La. C.E. art. 404(B), the trial court erred in admitting the testimony of the three prior sexual assault victims. We find that defendant has not shown that reconsideration is warranted or that this Court's prior decision was patently erroneous or produced unjust results. Under the discretionary

principle of "law of the case," an appellate court may refuse to reconsider its own rulings of law on a subsequent appeal in the same case. *State v. Burciaga*, 05–357 (La. App. 5 Cir. 2/27/06), 924 So.2d 1125, 1128 (internal citations omitted). The principle is applicable to all decisions of an appellate court; not solely those arising from full appeal. *State v. Johnson*, 06–859 (La.App. 5 Cir. 4/11/07), 957 So.2d 833, 840 (internal citations omitted). Reconsideration is warranted, however, when, in light of a subsequent trial record, it is apparent that the determination was patently erroneous and produced unjust results. *In re K.R.W., Jr.*, 03–1371 (La. App. 5 Cir. 5/26/04), 875 So.2d 903, 905 (internal citation omitted).

Here, the trial court record reflects that the three female witnesses testified regarding three separate incidents that were the subject of the *Prieur* hearing and subsequently reviewed by this Court. Neither our review nor defendant's brief reveals any new facts adduced at trial that would cast aspersions on this Court's previous ruling. Further, defendant does not cite to any statutory or jurisprudential authority that reveals that this Court's prior disposition was patently erroneous and produced an unjust result. Accordingly, in this instance, we will consider our previous ruling on the trial court's granting of the State's *Prieur* motion as the "law of the case" and decline reconsideration. *Id*; citing *State v. Jones*, 08–306 (La. App. 5 Cir. 10/28/08), 998 So.2d 173, 177, *writ denied,* 08–2895 (La.9/4/09), 17 So.3d 947, *cert. denied*, 559 U.S. 947, 130 S.Ct. 1519, 176 L.Ed.2d 126 (2010).

We point out that even without the admission of the three prior sexual assault incidents, there was overwhelming evidence presented by the State to prove defendant's guilt beyond a reasonable doubt of second degree murder to the jury.

At trial, Laura Oliver, the forensic DNA analyst, testified that defendant's DNA was found on the condom beside the victim's body, and his blood was found in the apartment, including the kitchen and near the apartment door. Further, Ms. Rauch, an expert in blood stain patterns, testified that large drops of blood found at

the scene were consistent with the "stab wounds" that defendant had on the right side of his arm.  Also, Detective Zeagler testified that: (1) a hat containing the logo of defendant's employer was found at the crime scene; (2) the same brand of condoms used at the crime scene were later found in defendant's apartment; and (3) a piece of stationary from the New Orleans Convention Center with the victim's first name and cell phone number was found on defendant's desk. Sergeant Burke testified that, through cell phone records, text messages between defendant and the victim were discovered weeks prior to the murder.  Detective Roniger testified that defendant's cell phone record revealed he was in the area of the homicide at the time of the victim's death.  Thus, any error regarding the admission of the other crimes evidence would have been harmless since the verdict in this case was surely unattributable to the error.  *State v. Joseph*, 16-349 (La. App. 5 Cir. 12/14/16), 208 So.3d 1036, 1047-48, *writ denied*, 17-77 (La. 4/7/17), 218 So.3d 109.

## Error Patent Review

Finally, as is our customary practice, we have reviewed the record for errors patent, pursuant to La.C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La.1975); *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir.1990), and find none which merit corrective action.

## Conclusion

In conclusion, we find no merit in defendant's arguments on appeal. Defendant's conviction and sentence are hereby affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 22, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 20-KA-302

## E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
ANDREA F. LONG (APPELLEE)          THOMAS J. BUTLER (APPELLEE)

## MAILED
MARY CONSTANCE HANES (APPELLANT)      HONORABLE PAUL D. CONNICK, JR.
ATTORNEY AT LAW                       (APPELLEE)
LOUISIANA APPELLATE PROJECT           DISTRICT ATTORNEY
POST OFFICE BOX 4015                  JOSHUA K. VANDERHOOFT (APPELLEE)
NEW ORLEANS, LA 70178-4015           RACHEL L. AFRICK (APPELLEE)
                                      ASSISTANT DISTRICT ATTORNEYS
                                      TWENTY-FOURTH JUDICIAL DISTRICT
                                      200 DERBIGNY STREET
                                      GRETNA, LA 70053